## BUNCH, ET AL. *v*. ABEL, ET AL. t/a Galena Boat Yard

[No. 81, September Term, 1969.]

*Decided December 23, 1969.*

The cause was argued before BARNES, McWILLIAMS, FINAN, and SINGLEY, JJ. and CHARLES E. ORTH, JR., Associate Judge of the Court of Special Appeals, specially assigned.

*L. Robert Evans,* with whom was *Walter Litvinuck* on the brief, for appellants.

Submitted on brief by *A. Parks Rasin, Jr.* for appellees.

McWILLIAMS, J., delivered the opinion of the Court.

The early history of the marina and boatyard owned and operated by the appellees (Abel)[1] was related in some detail by Judge Finan, for the Court, in *Kent County Planning Inspector v. Abel and Abel, t/a Galena Boat Yard,* 246 Md. 395 (1967), and for that reason we shall not repeat it here.

On 11 July 1968 the Kent County Planning Commission approved Abel's application for a "Zoning Certificate and/or Building Permit" for the construction of a "bulkhead and 7 covered slips" to be added to his marina, Galena Boat Yard, which at the time had 42 slips and which he had owned and operated since 1956. His 6½ acre tract, situated at the confluence of the Sassafras River and Swantown Creek, is designated "C" (Commercial) on the zoning map. In the minutes of the Commission there is the notation that "Mr. Rasin [counsel for Abel] stated that the application is for an extention [*sic*] of the marina and will not be used as warehouse, livery station or for boat repairs." The appellants appealed to the Kent County Board of Zoning Appeals. The hearing took place on 11 November 1968. "Interested parties" were heard, "all matters filed" were "read and considered" and the "specific property and the neighborhood" were studied. On 4 December 1969 the Board an-

---

1. The appellees are Robert Abel and Eva C. E. Abel, his mother. Robert, besides being a joint owner of the business, is in complete charge of its operations. Unless otherwise indicated all references are to him.

nounced its decision denying the appeal and affirming the action of the Planning Commission.

The Board's "Findings of Fact" state that Abel has an "established boatyard and marina" on property which is zoned commercial; that he proposes to build seven additional double slips for the mooring and storage of boats up to 50 feet in length and "to add fill along * * * [the] property line adjacent to the water to the extent of 280 feet;" that the bulkhead will be 270 feet long and within 500 feet of the adjoining "R" (Residential) property; that the "area in which repairs to boats are made is physically separated by a natural barrier" from the marina on which the bulkhead will be constructed; that the repair area consists of an enclosed, heated building 60 feet by 80 feet into which boats are brought by a "travel lift;" that boats are lifted out of the water in this area only; that all painting and major repairs are made in the building; that engine changes, "tune-ups" and major mechanical repairs are made "in the immediate area of the repair shed;" that Abel "would not clean out a fuel tank in the vicinity of the proposed use;" that he "will install shore facilities such as toilet[s] * * * showers, etc;" that owners, not employees of Abel, "have done maintenance work on their boats, when necessary;" that "pollution mentioned by * * * [appellants] is unsupported by evidence of any expert, nor are the allegations as to algae supported by an expert who could testify as to the cause."

In *Kent County Planning Inspector, supra,* we suggested the possibility that the boatyard and the marina uses might be divisible. Abel thereafter sought a decree declaring that such uses were divisible but Chief Judge Carter, speaking for the Circuit Court for Kent County, Equity No. 5118, dismissed his petition but "without prejudice to the right of the parties to bring appropriate proceedings before the Planning Commission and/or the Board of Appeals of Kent County for determination" of the question. The Board, after quoting from Judge Carter's opinion, concluded "as a matter of law" that the

combined operation of a boat repair yard and a marina by Abel "are divisible and separate enterprises." In its order upholding the decision of the Planning Commission the Board added the proviso that Abel "do no repairs in the area of the proposed use, *except as limited by Mr. Abel's testimony,* and provided further that showers, toilet facilities, etc., be installed *as provided in the testimony."* (Emphasis added.) An appeal to the circuit court followed. The case came on for trial before Rasin, J., on 10 March 1969. According to the docket entries "by agreement of counsel, no record was made of the testimony." Judge Rasin, several days later, filed a brief opinion in which he said he had "examined the transcript of the testimony taken at the hearing before the Board of Zoning Appeals" and, having found that there was sufficient evidence before the Board to make the question fairly debatable, he had "no alternative but to affirm the decision" of the Board. An appeal to this Court was timely filed.

It will now be clear that the pivot of this dispute is subsection 6 of Section 10.01 (Principal Permitted Uses) of Article X ("C"—Commercial District) of the Kent County Zoning Ordinance, which permits;

> "Marina or boat livery station, but not including boat repair yards, marine railways, warehouses and like uses unless five hundred (500) feet from any 'R' District."

If Abel's proposed construction will do nothing more than increase or intensify his marina operation it is a permissible commercial use. If it could be said that the two uses are not divisible then the proposed construction would be impermissible since it would be within the prohibition of "boat repair yards" within 500 feet of a residential district.

Appellants seem to suggest that there is some fatal contradiction in the words "marina" and "boat livery station." In their brief they say:

> "Webster's New Collegiate Dictionary, 1960

Edition, contains no reference to the word marina. The word livery, in that Edition, is defined, in part, as 'the keeping of horses, and hence of vehicles, boats, etc. in readiness to be hired.' It would thus appear that a boat livery station is a boat rental operation, with which the case at bar does not deal."

The same dictionary, however, gives as a first meaning for livery, "the feeding, stabling and care of horses *for pay*." A later edition (1965) defines marina as "a dock or basin providing secure moorings for motorboats and yachts and *often* offering supply, repair, and other facilities." (Emphasis added.)

Abel testified at the hearing before the Board of Zoning Appeals that while no repair work would be done in the marina area there were some things that could not very well be done elsewhere. An excerpt from his testimony follows:

"Q. Do you do mechanical repairs at your boat yard? A. In the immediate area of the repair shed.

"Q. Do you do mechanical repairs? A. Yes sir.

"Q. What kind of mechanical repairs do you do? A. Change engines; tune-ups.

"Q. Suppose the boat won't run, do you get it running for the owner? A. Yes, we can put points and plugs in it and get it running.

"Q. For example, suppose the generator isn't working. Would you repair that? A. No, I would have to take it off and take it down to Chestertown and have it repaired.

"Q. If there were some small repair you might be able to repair that, it if didn't require a new generator? A. If it didn't require a new generator.

"Q. Or exchanging voltage regulators, for example? A. Yes.

"Q. Battery replacement? A. Yes sir.

"Q. Carburetor adjustment? A. Yes.

"Q. Do you do carburetor replacement, do you? A. Yes.

"Q. These repairs are generally done wherever the boat happens to be, aren't they? A. Not necessarily.

"Q. It could be though? A. It could be done wherever the boat happens to be, yes."

Appellants say "[s]urely it is naiveté in the utmost degree to assume, based upon Mr. Abel's *nudum pactum,* that neither he nor his employees would perform repairs to the forty and fifty foot yachts while they occupy the slips in the new construction." Abel's *pactum* is not quite so *nudum* as appellants would have us believe. We think the Board relied on Abel's assurances that repair work in the marina area would be limited to the minor operations listed above and it would seem to follow that, absent such assurances, the permit would have been denied. And, to be sure, his avouchment in this regard is now a matter of record and should he at some future time exceed the limits staked out by the Board it will be a simple matter for the appellants to invoke the sanctions set forth in Article XVIII (Violations, Penalties and Enforcement) of the Zoning Ordinance.

We have read the testimony which was presented to the Board of Appeals and it seems clear to us that it made the issues there presented fairly debatable. We see no reason why Judge Rasin's order should be disturbed.

*Order affirmed.*
*Costs to be paid by the appellants.*